**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**
**CIVIL ACTION NO. 4:07CV-P109-M**

**JAMES FRANKLIN WOODS**                                                                                  **PLAINTIFF**

**v.**

**PAUL KNOWLES** *et al.*                                                                                  **DEFENDANTS**

### MEMORANDUM OPINION

Plaintiff, a convicted inmate currently incarcerated at the Hopkins County Jail, filed this civil rights action under 42 U.S.C. § 1983 ("§ 1983"). Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Court allowed Plaintiff's Eighth Amendment individual capacity claim against Defendant Paul Knowles based on his failure to properly treat Plaintiff's alleged urinary tract infection to proceed for further development. This matter is now before the Court on the parties' motions for summary judgment. Fully briefed, this matter is ripe for consideration. For the reasons explained below, the Court will grant Defendant Knowles summary judgment.

### I. FACTS

Plaintiff is a forty-nine-year-old, convicted, class D felon. He is currently serving the remainder of his sentence at the Hopkins County Jail. During the majority of the relevant time period, Defendant Paul Knowles was the head nurse at the Hopkins County Jail.

Prior to being transferred to the Hopkins County Jail, Plaintiff was held at the Jefferson County Jail as a pretrial detainee. While at the Jefferson County Jail, Plaintiff began experiencing pain in his lower back and groin areas as well as difficulty urinating. As a result, he signed up for "sick call." The Jefferson County Medical Staff examined Plaintiff and administered a swab urine culture. As a result, Plaintiff was diagnosed with a urinary tract

infection and prescribed a ten to twelve-day course of antibiotics. Plaintiff admits that he did not finish the entire course of the antibiotic. He states that he quit taking it after seven or so days because he was released for a weekend furlough immediately prior to being transferred to the Hopkins County Jail.

Upon entry into the Hopkins County Jail, Plaintiff did not notify prison officials of any health problems. Approximately one month after arriving at the Hopkins County Jail, Plaintiff's groin/back pain began to worsen. As a result, Plaintiff filled out a sick call request. The request is dated May 15, 2007. Plaintiff stated on the request that he was experiencing "kidney and pain in lower back/discomfort." He was seen by LPN J. Markham. The notes from that visit indicate that a dip-stick urinalysis was administered. The results of the urinalysis were negative. Plaintiff was given over-the-counter pain medication, instructed to reduce his exercise regime until his pain subsided, advised to increase his water intake, and instructed to return if his symptoms worsened or continued. Less than a month later, Plaintiff filled out another sick call request. This time he stated, "still in pain lower groin area, also lower back follow-up." Plaintiff was again seen by Nurse Markham. The notes from this visit indicate that another urinalysis was administered, which was also negative. The notes also indicate that Nurse Markham listened to Plaintiff's bowels and checked for a possible herniated groin. He was again given an over-the-counter pain medication and instructed to follow-up if necessary.

According to Plaintiff the nurses at the Hopkins County Jail used a "dip-stick" method to conduct the urinalysis instead of the "swab" method used at the Jefferson County Jail. Plaintiff believes that the swab method is "more accurate." Accordingly, he unsuccessfully requested Defendant Knowles to employ the swab method. Plaintiff maintains that Defendant Knowles violated Plaintiff's rights because he "didn't go to extremes" to find out what was wrong with

Plaintiff. It is undisputed, however, that in December 2007, after Plaintiff continued to complain about his condition, Defendant Knowles made Plaintiff an appointment to see a medical doctor. As explained by Plaintiff, "he [Defendant Knowles] actually put in the request for me to be seen by the doctor because I never submitted a request to see the doctor. It was something Paul did." Upon examining Plaintiff, the doctor noted a swollen testicle and placed Plaintiff on a course of antibiotics. Plaintiff has completed the course of antibiotics, but still reports experiencing discomfort in his groin region. Plaintiff sums up his complaints against Defendant Knowles as follows: "I think they should have given more tests, you know, because I was still in pain and I felt like, you know, you should treat me like I'm one of your kids. Don't treat me like as an inmate, you know--because one of your kids, they get the best treatment. Just because the dip stick said negative, don't just throw it off and say well, there ain't nothing wrong with you."

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, however, the non-moving party must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court reviews the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than show there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586, (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights if they are deliberately indifferent to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). However, not every claim of inadequate medical treatment states an Eighth Amendment violation. *Id.* at 105. The indifference must be substantial; that is, it must be an offense to evolving standards of decency. *Id.* at 106. A patient's disagreement with his physician over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 816 n.13 (6th Cir. 1996); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). The question of whether diagnostic techniques or other forms of treatment are indicated is a classic example of a matter for medical judgment. At most, a medical decision not to order an x-ray or like measures represents medical malpractice. *Estelle*, 429 U.S. at 107. Furthermore, allegations of "inadvertent failure to provide adequate medical care" or of a negligent diagnosis or treatment of a prisoner fail to state a cause of action. *Id.* at 105-06. Courts will generally refrain from "second guessing" the adequacy of a particular course of treatment where a prisoner has received some medical attention and the dispute concerns the adequacy of that treatment. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Simply stated, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 107.

The facts are undisputed that Plaintiff was provided with treatment for his complaints.

Two urine tests were administered; Plaintiff was provided with over-the-counter pain medication; he was examined for a hernia; and when his pain persisted Defendant Knowles scheduled Plaintiff to see a medical doctor. Absent is any indication that Defendant Knowles deliberately withheld treatment from Plaintiff. In fact, the record indicates precisely the opposite. When Plaintiff's symptoms persisted, Defendant Knowles took affirmative action to make sure that Plaintiff was seen by a competent medical doctor. Defendant Knowles is entitled to summary judgment on Plaintiff's deliberate indifference claim.[1]

Consistent with this Memorandum Opinion, the Court will separately enter summary judgment in Defendant Knowles' favor.

Date:

cc: Plaintiff, *pro se*
 Counsel of record

4414.008

---

[1] Defendant Knowles also argued that he was entitled to summary judgment because Plaintiff did not properly exhaust his administrative remedies prior to filing suit. The Court is permitted to dispose of a claim that is meritless without first requiring exhaustion of administrative remedies. *See* 42 U.S.C. § 1997e(c)(2). As such, the Court expresses no opinion on whether Plaintiff properly exhausted his administrative remedies with respect to his claim against Defendant Knowles.